IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PAVLO ZINKEVYCH,<br>　　　Petitioner,<br><br>v.<br><br>JOSH JOHNSON, Acting Field Office Director (Dallas), Immigration and Customs Enforcement, et al.,<br>　　　Respondents. | §<br>§<br>§<br>§　　No. 3:25-CV-1149-K-BW<br>§<br>§<br>§<br>§<br>§<br>§ |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Petitioner Pavlo Zinkevych's Petition for a Writ of Habeas Corpus and Request for Release from Detention (Dkt. No. 1 ("Pet.")) and Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction (Dkt. No. 10 ("Mot.")) and brief in support (Dkt. No. 11 ("Br."), filed on November 19, 2025.  The case was referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. (Dkt. No. 3.)

For the reasons that follow, the undersigned recommends that the Petition for a Writ of Habeas Corpus (Dkt. No. 1) be **DENIED**, and the Motion for TRO (Dkt. No. 11) be **DENIED**.

### I.　BACKGROUND

Petitioner filed his petition on May 6, 2025, asking this Court to: issue a declaratory judgment stating that Petitioner's detention is unlawful; order that he be

immediately released from Department of Homeland Security ("DHS") custody; enter an order finding that DHS's refusal to fulfill its obligation to process Petitioner's Temporary Protected Status ("TPS") application is unlawful; issue an order directing DHS to adjudicate Petitioner's TPS application within 30 days; and for such other relief, as may be just an appropriate, including costs, expenses, and reasonable attorney fees. (Pet. at 8-9.)

On May 8, 2025, the Court entered an Order to Show Cause requiring Respondents to file an answer or response to the petition within 60 days and allowing Petitioner to submit a reply brief within 30 days. (*See* Dkt. No. 5.) On July 7, 2025, Respondents filed a brief in response (Dkt. No. 7 ("Resp."), along with a supporting appendix (Dkt. No. 8 ("App").) Petitioner filed a reply on August 5, 2025. (Dkt. No. 9 ("Reply").) Accordingly, the petition is ripe for consideration.

The petition alleges the following. Petitioner is a citizen of Ukraine who was "paroled into the United States on August 13, 2022, under the Ukrainian Humanitarian Parole Program." (Pet. ¶ 17; Pet. Exh. 2, 3.) Petitioner filed a TPS application on February 24, 2025. (Pet. ¶ 18; Pet. Exh. 4.) Petitioner alleges he "came to the attention of DHS on or about January 26, 2025, following an arrest on suspicion of driving while intoxicated (DWI)," but he "has not been convicted of that, or any other, offense." (Pet. ¶ 19.) Then, '[o]n or about January 28, 2025, Petitioner posted an appearance bond and the State of Texas released him to the custody of DHS. DHS refused to set a bond for the release Petitioner." (Pet. ¶ 20.) "On March 10, 2025, DHS initiated removal proceedings . . . charging that

[Petitioner] is removable under 8 U.S.C. section 1182(a)(7)(A)(i)(I), having no visa or valid entry document." (Pet. ¶ 21; Pet. Exh. 5.) "DHS has charged no other removal ground." (*Id*.) Petitioner alleges that the ground of removal charged by DHS is expressly waived by the TPS statute, 8 U.S.C. § 1254a(c)(2)(A)), and "even if the immigration court were to find Petitioner removable, he would not be disqualified from TPS and could not be deported, at least until his TPS Application were finally adjudicated." (Pet. ¶ 22.)

After being detained, Petitioner requested a custody redetermination, but the Immigration Judge denied Petitioner's request for lack of jurisdiction because "Petitioner is an 'arriving alien,' by virtue of having been paroled into the U.S." ((Pet. ¶ 23; Exh. 6.) But Petitioner alleges that his "prima facie eligibility for TPS has been established by his [TPS] Application and supporting documentation," including his birth certificate, passport, his arrival date, and his physical presence and continuous residence in the United States, his "admissibility" to the U.S., and the timely filing of his TPS application on February 24, 2025. (Pet. ¶¶ 25-29 (citing Pet. Exh. 1, 2, 5).)

Petitioner also alleges that his unlawful detention threatens his health due to his "medically documented need for a complex procedure to address a severe chronic periodontal disease," the cost of which Petitioner is unable to raise without working and which cannot be performed at any DHS custodial facility. (Pet. ¶¶ 32-34.) For these reasons, Petitioner has requested that DHS expedite the processing of his TPS Application (Pet. ¶ 35; Pet. Exh. 9), but "[o]n May 5, 2025, DHS informed Petitioner

that it will not adjudicate TPS Applications from Ukrainian parolees, including Petitioner's, because they are the subject of an 'administrative hold,' pending 'screening and vetting.'" (*Id.* ¶ 36; Pet. Exh. 10 ("Notice")). Because "[t]he Notice does not predict or estimate how long the 'administrative hold' will last," the hold appears to be indefinite." (*Id.*)

Petitioner submits the following exhibits in support of his petition:

1. Petitioner's Birth Certificate and Certified Translation;

2. Petitioner's Passport;

3. Admission Record, Form I-94;

4. Receipt Notice;

5. Notice to Appear;

6. Order of the Immigration Judge;

7. DHS Opposition to Termination;.

8. Letter or Dr. Anna Vasilev D.M.D.;

9. Request to Expedite Adjudication of TPS Application, April 16, 2025;

10. Notice from Immigration Services.

(*See* Dkt. Nos. 1-2.[1])

Respondents allege the following additional facts regarding Petitioner's current immigration status. As of June 17, 2025, Petitioner's TPS application

---

[1] Petitioner's exhibits are referred to using the exhibit number assigned by Petitioner, *e.g.*, Pet. Exh. 1.

remained pending. (*See* Resp. at 2.) On May 22, 2025, the Immigration Judge ("IJ") terminated Petitioner's removal proceeding without prejudice, finding that Petitioner had shown he was eligible for discretionary termination based on the pending TPS application. (*See* App. 016-019.) DHS filed an appeal on June 4, 2025, which remains pending before the Board of Immigration Appeals ("BIA"). (*See* Resp. at 2; App. 022-025.)[2] "Therefore, there is no final order of removal in [Petitioner's] case." (Resp. at 2.)

Respondents' appendix contains the following exhibits:

1. U.S. Department of Homeland Security, Record of Deportable/ Inadmissible Alien (Form I-213) (Jan 28, 2025) (App. 001-005);

2. Department of Homeland Security, Notice to Appear (DHS Form I-862) (Jan 28, 2025) (App. 006-010);

3. Receipt for I821- Application for Temporary Protected Status (Feb 24, 2025) (App. 011-012);

4. U.S. Department of Justice, Executive Office for Immigration Review, El Paso PSC Immigration Court, Decision and Order of the Court (May 22, 2025) (App. 013-020);

5. U.S. Department of Justice, Executive Office for Immigration Review, Notice of Appeal from a Decision of an Immigration Judge (Form EOIR-26) (Jun 4, 2024) (App. 021-032).

(*See* App. at 1-2.)[3]

---

[2] DHS's appeal asserts, among other things, that the IJ erred in finding that Petitioner "appear[ed] eligible for [TPS], which is a form of lawful status" permitting discretionary termination pursuant to 8 C.F.R. 1003.18(d)(1)(ii)(B). (*See* App. 025 (quoting App. 017).) Respondents contend that the IJ erred because the subsection cited in the decision "does not apply to TPS, which is expressly addressed a separate subsection that requires a grant of TPS before an Immigration Judge may grant discretionary termination on the motion of a single party [,] *see* 8 C.F.R. § 1003.18(d)(1)(ii)(C)." (App. 025.)

[3] Respondents' exhibits are referred to by the Appendix ("App.") page number.

On November 19, 2024, after the petition was fully briefed, Petitioner filed a motion for TRO, essentially seeking the same relief requested in the petition. (*See generally* Mot.) Respondents have not submitted a response, and the time do so has passed. *See* N.D. Tex. Civ. R. 7.1(e) ("A response and brief to an opposed motion must be filed within 21 days from the date the motion is filed."). Accordingly, the TRO is likewise ripe for consideration.

## II. LEGAL STANDARDS AND ANALYSIS

### A. Subject Matter Jurisdiction

Because it concerns the Court's power to decide the case, "[j]urisdiction is always first." *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) (quoting *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021)); *see also United States v. Willis*, 76 F.4th 467, 479 (5th Cir. 2023) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). Although Respondents do not challenge the Court's jurisdiction over this matter (*see generally* Resp.), the Court "is duty-bound to examine its subject-matter jurisdiction sua sponte." *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 n.4 (5th Cir. 2017); *see also Ins. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *H&D Tire & Auto.–Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 328 (5th Cir. 2000).

Several provisions of the INA "curtail the jurisdiction of federal district courts in immigration cases." *Lopez-Arevelo v. Ripa*, ___ F. Supp. 3d ___, 2025 WL 2691828, at *3 (W.D. Tex. Sept. 22, 2025) (citing *Jennings*, 583 U.S. at 292-96). But

"the Court retains jurisdiction to review a noncitizen's detention insofar as that detention presents constitutional issues, such as those raised in a habeas petition." *Id*. at *5 (cleaned up); *accord Barrientos v. Baltazar*, No. 5:24-CV-00005, 2024 WL 5455686, at *3 (S.D. Tex. Dec. 18, 2024) ("Noncitizens may challenge their immigration detention under § 2241, although Congress has limited this Section's reach." (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001); *Nielsen v. Preap*, 586 U.S. 392, 419-20 (2019))), *adopted*, 2025 WL 744703 (S.D. Tex. Mar. 7, 2025); *Trump v. J. G. G.*, 604 U.S. 670 (2025) (acknowledging that immigration-related detainees' "claims fall within the 'core' of the writ of habeas corpus") (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022) (internal quotations omitted)).

As Petitioner challenges his detention, not the underlying removal proceedings (*see generally* Pet.), this Court has jurisdiction to assess his petition. The undersigned, therefore, turns to the merits of his claim.

**B.    Temporary Protected Status**

Congress created the TPS program as part of the Immigration Act of 1990. It was established to "provide humanitarian relief to foreign nationals in the United States who come from specified countries." *Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). The program allows the government to "designate a country for the program when it is beset by especially bad or dangerous conditions," and if they obtain TPS status, "[t]hat protects them from removal and authorizes them to work here as long as the TPS designation lasts." *Id*.; *see also* 8 U.S.C. § 1254a; *Osman v. Schmidt*, No.

25-CV-286, 2025 WL 870048, at *1 (E.D. Wis. Mar. 20, 2025).  The initial designation lasts for 6, 12, or 18 months, at the Secretary's discretion.  *See id*. § 1254a(b)(2).  "TPS protects its recipients from removal only while the designation is valid; it affords no pathway to family reunification, permanent residency, or citizenship."  *Dhakal v. Sessions*, 895 F.3d 532, 537 (7th Cir. 2018).  An applicant for TPS "who establishes a prima facie case of eligibility for benefits" "shall be provided" the benefits of TPS until a final determination is made as to his eligibility.  8 U.S.C. § 1254a(a)(4)(B).

There are specific requirements that must be met to become a TPS holder.  For example, an individual must have "been continuously physically present in the United States since the effective date of the most recent designation of that [foreign] state."  *Id*. § 1254a(c)(1)(A)(i).  In addition, an individual must be "admissible as an immigrant."  *Id*. § 1254a(c)(1)(A)(iii).  An individual is inadmissible if, for example, they have been convicted of certain crimes (such as a crime involving moral turpitude or drugs) or are a member of a terrorist organization.  *See id*. § 1182(a)(2)-(3).  Moreover, an individual is expressly deemed ineligible for TPS if they have "been convicted of any felony or 2 or more misdemeanors committed in the United States."  *Id*. § 1254a(c)(2)(B).  The Secretary "shall withdraw [TPS] granted to an alien . . . if [the Secretary] finds that the alien was not in fact eligible for such status."  *Id*. § 1254a(c)(3)(A).

"[A] TPS recipient is 'considered as being in, and maintaining, lawful status as a nonimmigrant' for the purpose of becoming [a legal permanent resident]."  *Sanchez*,

593 U.S. at 412 (quoting 8 U.S.C. § 1254a(f)(4)). Relevant authorities "shall not remove the [noncitizen] from the United States during the period in which [TPS] is in effect." 8 U.S.C. § 1254a(a)(1)(A). Likewise, 8 U.S.C. § 1254a(d)(4), as part of the subsection related to documentation of TPS, provides that a non-citizen with TPS "shall not be detained by the Attorney General on the basis of the [noncitizen]'s immigration status in the United States." 8 U.S.C. § 1254a(d)(4). Under this statute, courts have considered writs of habeas corpus and determined that detained petitioners with TPS cannot remain detained pending lawful immigration proceedings. *See, e.g.*, *Rojas v. Venegas*, No. 1:25-CV-00056, 2025 WL 996421, at *1 (S.D. Tex. Apr. 2, 2025) ("[t]he Court holds that Petitioner is a Venezuelan national with valid Temporary Protected Status and was wrongfully detained under 8 U.S.C. 1254a(a)(1)(A)(i).").

Petitioner is a citizen of Ukraine, a country that has been designated for TPS.[4] He contends that because he is prima facie eligible for TPS, he is entitled to the benefits of TPS while his application is pending and therefore cannot be detained. (*See generally* Pet. (citing 8 U.S.C. § 1254a(d)(4)).) Respondents contest Petitioner's assertions for several reasons. First, they argue that "nothing in the statute governing TPS, 8 U.S.C. § 1254a(a)(1), prohibits detention at this point (i.e., where the TPS

---

[4] According to USCIS, Ukraine is designated for TPS status through October 19, 2026. *See* USCIS, Temporary Protected Status Designated Country: Ukraine, https://www.uscis.gov/humanitarian/temporary-protected-status/TPS-Ukraine (last visited Dec. 16, 2025).

application is pending but has not yet been granted)." (*See* Resp. at 4 (citing *Fugon v. Napolitano*, No. 10-13935, 2010 WL 4792376, at *3 (E.D. Mich. Nov. 18, 2010)).) Respondents further argue that the initial grant of TPS is entirely discretionary, and there has been no prima facie determination in Petitioner's case because USCIS has not issued Petitioner an Employment Authorization Document ("EAD") or a prima facie letter. (*See* Resp. at 5.) Accordingly, argue Respondents, "Petitioner is not entitled to the benefits of TPS at this time." (*See id*. at 5-6.) Respondents also explain that "Petitioner has been notified that an administrative hold has been placed on all benefit requests pending the completion of required screening and vetting to identify any fraud, public safety, or national security concerns." (*Id*. at 5.) Furthermore, in response to Petitioner's reliance on a statement by an ICE attorney in a filing in immigration court that "[Petitioner] appears eligible for TPS under section 244(c) of the Immigration and Nationality Act (INA) and has applied for it" and is therefore "entitled to the benefits listed in section 244(a)(1) of the INA" (Pet. ¶ 30 (citing Pet. Exh. 7)), Respondents counter that the cited passage only states that "Petitioner *appeared* eligible for TPS" and ultimately, it is USCIS's decision as to whether to grant TPS. (*See* Resp. at 6 n.1 (emphasis in original).)

Finally, although Petitioner insists that his TPS application establishes that he is prima facie eligible because he satisfies the five requirements, his assertions as to the admissibility requirement are unclear. Petitioner claims that he is admissible except for the ground of inadmissibility expressly waived by TPS (*see* Pet. ¶ 27), but the fact remains that such a ground of inadmissibility was charged in the Notice (Pet.

- 10 -

Exh. 5), and no further details regarding Petitioner's admissibility (or inadmissibility) are currently before the Court. Accordingly, Petitioner has not conclusively established that he is prima facie eligible for TPS.

Additionally, Petitioner has provided no evidence showing that it is the role of this Court to determine whether he has established prima facie eligibility for the program. Contrary to Petitioner's assertions, neither the statute nor its accompanying regulations specify when or how an alien is expected to "establish a prima facie case of eligibility for benefits." *Osman*, 2025 WL 870048, at *2; *see also Ali v. Williams*, No. 1:25-CV-00419, 2025 WL 3092776, at *3 (W.D. La. July 29, 2025). Nor does Petitioner clarify which entity is responsible for making that determination. *See Osman*, at *3. "But nothing in the text or history of the statute or the structure immigration law [sic] generally suggests that prima facie eligibility is a determination for a federal district court." *Id*. Instead, as embodied in the exhaustion doctrine, the assumption is that matters are first addressed administratively." *Id*. (citing cases). Thus, the Court is not able to determine Petitioner's prima facie eligibility for TPS. This responsibility lies with the appropriate agency.

### C. Detention During Removal Proceedings

Petitioner next argues that his continued detention violates substantive due process because removal is not likely in the reasonably foreseeable future, and therefore his detention serves no legitimate purpose. (*See* Reply at 6 (citing *Zadvydas*, 533 U.S. at 700-01).) Petitioner also argues that "his continued, indefinite detention,

which began over six months ago," is unlawful because his case will most likely take "longer than the 'five-month' duration *Demore* contemplated." (Reply at 1, 4-6 (citing *Demore v. Kim*, 538 U.S. 510, 513 (2003)).)

8 U.S.C. § 1226 governs the custodial status of aliens in pending removal proceedings. *See Zadvydas*, 533 U.S. at 683 (summarizing statutory provisions governing the custodial status of aliens in both pre-removal order and post-final removal order cases). Unlike the mandatory detention provision under § 1226(c), which requires that the Agency detain a removable alien convicted of certain aggravated crimes during removal proceedings, Petitioner's detention is pursuant to § 1226(a). Under § 1226(a), the Attorney General may arrest and detain, or release on bond or conditional parole, the alien pending the removal decision. Section 1226(b) also gives the Attorney General discretion to revoke a bond or parole under subsection (a). Where the Attorney General has determined the terms of custody of an alien pursuant to § 1226(a) or (b), an alien may seek a re-determination of that decision by an IJ. *See* 8 C.F.R. § 1236.1(d)(1); 8 C.F.R. § 1003.19(c)(1)-(3). The IJ's decision regarding bond may in turn be appealed to the BIA. 8 C.F.R. 1236.1(d)(3); 8 C.F.R. 1003.38(b).

As noted previously, some provisions of the INA curtail federal district court jurisdiction over immigration cases. Section 1226(e) is one such provision. It provides as follows:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this

>section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). Thus, the statute provides no right to judicial review in federal district court of custody decisions of this type pending removal; therefore, there is no basis for Petitioner to request release on bond in this Court. *See also Maramba v. Mukasey*, No. 3:08-CV-351-K, 2008 WL 1971378, at *3 (N.D. Tex. Apr. 28, 2008) (citing § 1226(e) when explaining that there was no jurisdiction for a habeas petitioner's claims "seeking release on supervision or a lower bond").

Even assuming the Court had jurisdiction to review the terms of Petitioner's custody under § 1226(a), Petitioner has not exhausted his administrative remedies, as his immigration case is now on administrative appeal, and the BIA has not issued a decision in that appeal. (Resp. at 4.) *See Rivera v. Gonzales*, No. CIV.A. H-06-0028, 2006 WL 846345, at *1 (S.D. Tex. Mar. 31, 2006) ("If the BIA rules against Rivera, he may then file a petition for review with the United States Court of Appeals for the Fifth Circuit. Rivera cannot use a writ of habeas corpus to circumvent the administrative process, the exhaustion requirement, or the statutory jurisdictional limits." (internal citations omitted)). That Petitioner suffers from severe chronic periodontal disease that will worsen without proper treatment (*see* Pet. ¶ 32; Reply at 9) and he is unable to raise the cost of the procedure without working (*see* Pet. ¶ 34), does not absolve Petitioner from fully exhausting his administrative remedies.

Finally, the undersigned addresses Petitioner's argument that his continued detention is unlawful under *Demore* and violates his substantive due process because

his removal is not likely in the reasonably foreseeable future. (*See* Reply 5-8.) Insofar as Petitioner seeks to raise a pure constitutional challenge to the statute that permits his detention—namely that his detention under § 1226(a) is unauthorized and violates the Due Process Clause, the undersigned finds that the Court has jurisdiction without first requiring exhaustion of administrative remedies. *See Maramba*, 2008 WL 1971378, at *3; *Kambo v. Poppell*, No. SA-07-CV-800-XR, 2007 WL 3051601 (W.D. Tex. Oct. 18, 2007) (holding that the court had jurisdiction over Kambo's third and fifth claims that his detention under § 1226(a) was without authority and excessively lengthy and violated the Constitution's due process clause as applied to him); *see also Fuller v. Gonzales*, No. CIV.A.3:04CV2039SRU, 2005 WL 818614, at *1 (D. Conn. Apr. 8, 2005) (holding that petitioner's claim that § 1226(c) was unconstitutional as applied to her was within the court's jurisdiction and that claim need not be exhausted through the BIA because the BIA cannot address constitutional issues).

The Due Process Clause contains both a substantive and a procedural component. In *United States v. Salerno*, the Supreme Court explained:

> [T]he Due Process Clause protects individuals against two types of government action. So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as "procedural" due process.

*United States v. Salerno*, 481 U.S. 739, 746 (1987) (citations omitted). "Detention during removal proceedings is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 531 (mandatory detention of criminal aliens during removal proceedings under 8 U.S.C. § 1226(c) is constitutionally valid even where there has been no individualized finding that the alien is unlikely to appear for his deportation hearing).

In *Demore*, the Supreme Court found that detention "for the limited period of [the alien's] removal proceedings" is constitutional. *Demore*, 538 U.S. at 531. Although district courts do not have statutory authority to order the release of detainees, some courts have held that the Supreme Court's use of the language "for the limited period of [the alien's] removal proceedings" implies that, at some point, the length of the detention can become unreasonable and unconstitutional. But *Demore* did not sanction any specific period at which point pre-order detention could become unconstitutional. The majority of courts interpreting *Demore* determine the reasonableness of the length of detention on a case-by-case basis. *See Ramirez v. Watkins*, No. CIV.A. B:10-126, 2010 WL 6269226, at *13 (S.D. Tex. Nov. 3, 2010) (collecting cases).

Petitioner contends that his detention is unlawful because his case will most likely take "longer than the 'five-month' duration *Demore* contemplated." (Reply at 4-6 (citing *Demore*, 538 U.S. at 513).) It is true that in *Demore*, the Supreme Court made repeated references to the "brief" and "limited" timeframe at issue (*id*. at 513,

523, 526, 529 n.12) and specifically noted that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal" (*id*. at 530 (relying on statistics from the Executive Office for Immigration Review ("EOIR")). However, "[t]hirteen years after the decision in *Demore*, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors,'" and for the years 1999–2001, the "average length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." *Rodriguez v. Nielsen*, No. 18-CV-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (internal citations omitted). The Government Accountability Office conducted a study and "found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days." *Rodriguez*, 2019 WL 7491555, at *5 (citing United States Government Accountability Office, Immigration Courts: Actions Needed to Reduce Case Backlog and Address Long-Standing Management and Operational Challenges 33 (2017), https://www.gao.gov/assets/690/685022.pdf)).

In light of the foregoing, the duration of Petitioner's detention, since January 28, 2025, is not unreasonable. Petitioner is being detained pursuant to §1226(a) while removal proceedings are pending. His case is now on administrative appeal, and the BIA has not issued a decision in that appeal. Accordingly, Petitioner's detention at this time is permissible, and he has not shown that he is entitled to habeas relief under these circumstances.

## III.  RECOMMENDATION

For the foregoing reasons, the habeas petition (Dkt. No. 1) should be **DENIED**, and the Motion for TRO (Dkt. No. 11) should be **DENIED**.

**SO RECOMMENDED** on December 29, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).